# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RAFAT AZZAM,

                Plaintiff,

                v.

RIGHTWAY DEVELOPMENT INC., *et al*.,

                Defendants.

Civil Action No. 11-00622 (BAH)

## MEMORANDUM OPINION

"A man's house is his castle," even if others do not perceive it as such. In this unusual case, Plaintiff Rafat Azzam alleges that one day he returned to his house to find that his house and its contents had vanished entirely. The plaintiff alleges that a few months after purchasing a new house in the District of Columbia, he arrived at his property to find only an empty lot where his house had previously stood. The plaintiff brought this lawsuit seeking to hold three defendants liable for unlawfully demolishing his house: the bank from which the plaintiff purchased the property; the property management company that allegedly managed the property for the bank; and the demolition company that allegedly razed the house. The property management company – Defendant Safeguard Properties, LLC – has moved to dismiss the Amended Complaint against it. For the reasons explained below, Safeguard's motion to dismiss is denied.[1]

## I.      BACKGROUND

The following facts are alleged in the Amended Complaint and assumed to be true for the purposes of resolving the motion now before the Court.

---

[1] Defendant Safeguard also requests an oral hearing pursuant to Local Civil Rule 7(f). This request is denied.

On April 29, 2010, Plaintiff Rafat Azzam purchased real property located at 1053 44th Street, NE, Washington, D.C. from Defendant CitiMortgage, Inc., a company which provides mortgage services. Am. Compl. ¶¶ 5, 11, 17. The property included a two-story house (the "House"). *Id.* ¶¶ 11, 17. The deed conveying the property in fee simple from CitiMortgage to Azzam, dated April 29, 2010, was recorded on August 19, 2010 in the office of the Washington, D.C. Recorder of Deeds. *Id.* ¶ 19. While Azzam waited for permits allowing him to begin renovating the House, he lived elsewhere, but he visited the House on numerous occasions and moved personal property, worth between $15,000 and $20,000, into the House. *Id.* ¶¶ 20, 21.

On October 21, 2010, Azzam went to check on his property. Much to his surprise and dismay, he arrived to find that the House, along with all of its contents, had vanished.[2] *Id.* ¶ 22. A local mail carrier told Azzam that a work crew had razed the House around the first week of October 2010. *Id.* ¶ 25. On the fence around the empty lot where Azzam's house once stood, there was a sign that read: "Rightway Development." *Id.* ¶ 23.

Upon contacting Rightway's headquarters, Azzam was told that "the bank" had instructed Rightway to raze the House.[3] *Id.* ¶ 26. Azzam apparently understood "the bank" to refer to CitiMortgage or its agents.

According to the Amended Complaint, CitiMortgage engaged Safeguard Properties, LLC to provide property management services for CitiMortgage in the District of Columbia. *Id.* ¶¶ 4, 5. Safeguard, in turn, engaged Rightway Development, Inc. to provide construction, demolition, and development services. *Id.* ¶¶ 3, 4. Azzam alleges that Defendants Rightway, Safeguard, and

---

[2] The plaintiff vividly recounts his reaction in the original Complaint: "I couldn't believe what I was seeing. I was nearly about to faint and almost felt my heart stop. I immediately called my sister to make sure that I was conscious and my brain was working properly." Compl. ¶ 1.

[3] According to the original Complaint, while making numerous phone calls to Rightway and others in an attempt to discover why his house had been razed, the plaintiff was treated as if he was "drunk or crazy" or "mentally sick." Compl. ¶¶ 2, 3.

CitiMortgage filed or caused to be filed an application to raze the House with the Washington, D.C. Permit Operations Division on October 21, 2009, and ultimately carried out the demolition of the House in October 2010 – despite the fact that CitiMortgage had sold the House to Azzam in the interim. *Id.* ¶¶ 17, 27.

As a result of these events, Azzam alleges that he has been permanently deprived of the use, possession, and enjoyment of the House and the personal property he had moved into the House. *Id.* ¶ 28. Azzam claims that the destruction of his house caused him severe emotional distress, severe major depression, difficulty sleeping, poor appetite, loss of capacity of enjoyment of life, and a difficulty remaining focused on tasks. *Id.* ¶ 29. He has also isolated himself from others and lost interest in pursuing his education. *Id.* These harms have required Azzam to seek medical care and to take medications. *Id.*

Less than a week after he discovered the razing of his house, on October 25, 2010, Azzam filed a *pro se* Complaint against Rightway Development, Inc. in the Superior Court for the District of Columbia. With the assistance of counsel, he then filed the Amended Complaint on February 22, 2011, naming Safeguard Properties, LLC and CitiMortgage, Inc. as additional defendants. Defendants CitiMortgage and Safeguard removed the action to this Court based on diversity of citizenship on March 24, 2011.

Defendants Rightway and CitiMortgage filed answers to the Amended Complaint. Defendant Safeguard filed a motion to dismiss the Amended Complaint on March 31, 2011. Safeguard's motion is presently before the Court.

## II.   DISCUSSION

### A.   Standard of Review for Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557). Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### B.   Safeguard's Arguments

Azzam's Amended Complaint brings claims against Safeguard for "at least trespass, conversion, infliction of emotional distress, and negligence . . . ." Am. Compl. ¶ 51. Additionally, Azzam requests punitive damages and attorneys' fees.

Safeguard argues that all of the claims against it should be dismissed with prejudice. Safeguard's arguments for dismissal of the Amended Complaint fall into two categories. Safeguard's main contention is that the Amended Complaint fails to allege facts that directly connect Safeguard to the alleged razing of Azzam's House by Rightway. In addition, Safeguard also appears to contend, often without explanation, that Azzam has failed adequately to allege the requisite elements of the tort claims asserted in the Amended Complaint.

### 1. Principal's Liability for an Agent's Torts

Safeguard's central argument is that the Amended Complaint must be dismissed because the Amended Complaint does not allege sufficient facts directly tying Safeguard to the destruction of Azzam's House. The Court disagrees. While Azzam claims that Rightway – not Safeguard – physically entered his property and demolished the House, the Amended Complaint alleges that Safeguard directed Rightway to perform the demolition.[4] The key allegations regarding Safeguard's role in razing Azzam's house are that:

> "Safeguard engaged Rightway to provide construction, demolition, and development services in the District of Columbia on behalf of Safeguard . . ." Am. Compl. ¶ 4.

> "Rightway has operated under the direction and control of Safeguard . . . in providing construction, demolition, and development services on behalf of Safeguard . . ." *Id.* ¶ 3.

> On "October 21, 2009, Defendants [Rightway, Safeguard, and CitiMortgage] filed or caused to be filed an application to raze the House with the Washington, DC Permit Operations Division." *Id.* ¶ 27.

> "Safeguard or . . . entities acting under the direction or control of Safeguard intentionally entered onto Mr. Azzam's Property without notice, consent, or privilege." *Id.* ¶ 45.

> "Safeguard breached its duty of care to Mr. Azzam by authorizing, directing, and/or permitting this unlawful entry onto Mr. Azzam's property." *Id.* ¶ 47.

> Upon contacting Rightway's headquarters after finding his House destroyed, Azzam was told that "the bank" had instructed Rightway to raze his House. *Id.* ¶ 26.

> "On information and belief, Safeguard has operated under the direction and control of CitiMortgage, Inc. in providing property management services for CitiMortgage in the District of Columbia." *Id.* ¶ 4.

---

[4] The Court notes that Safeguard nowhere expressly denies that it directed the razing of the House—perhaps because it cannot. In its answer to the Amended Complaint, Defendant Rightway admitted that "in the present case it was directed by Safeguard Properties, LLC [and] its relationship with Safeguard Properties, LLC was as an independent contractor." Answer of Defendant Rightway Development Inc. to the First Amended Complaint at 2, Third Defense. The Court, however, does not rely on this admission or on Rightway's characterization of its relationship with Safeguard in deciding the present motion to dismiss.

These allegations are adequate to plead Safeguard's liability because the plaintiff has alleged facts that plausibly indicate that Safeguard directed Rightway's demolition of the House and, under well-settled tort and agency law principles, a principal may be held liable for individuals and entities acting under its direction or control. Indeed, Safeguard's motion papers are wholly deficient in addressing these agency law principles. Safeguard seems to assume that it cannot incur any liability unless Azzam alleges that Safeguard physically demolished the House. That, of course, is incorrect.

The facts alleged in the Amended Complaint suggest that, in razing the House, Rightway was either an employee or independent contractor of Safeguard. *See* Am. Compl. ¶ 4. Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of his or her employment. *Prunte v. Universal Music Grp.*, 484 F. Supp. 2d 32, 44 (D.D.C. 2007); *see also Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 861-62 (D.C. 1982) (finding grocery store vicariously liable for assault and battery committed by a security guard employed by an independent security service because the grocery store exercised sufficient control over the guard's activities to support a finding that the guard was a servant rather than independent contractor of the store); Restatement (Third) of Agency § 7.07 (2006).

If Rightway is determined to be an independent contractor of Safeguard, rather than an employee, Safeguard could still be held liable for negligently directing the contractor or directing the contractor to perform a tortious act. While "[t]he general rule in the District of Columbia is that an employer of an independent contractor is not liable for physical harm caused by the acts or omissions of the contractor, . . . [t]his independent contractor rule . . . bristles with a series of long-standing exceptions specifying certain conditions under which employers can be held vicariously or directly liable for the torts of their contractors." *Wilson v. Good Humor Corp.*,

757 F.2d 1293, 1301 (D.C. Cir. 1985) (citing Restatement (Second) of Torts § 410-429 (1965)). For example, "[t]he employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself." Restatement (Second) of Torts § 410 (1965) (cited in *Wilson*, 757 F.2d at 1301); *see also John D. Neumann Properties, Inc. v. Washington Metro. Area Transit Auth.*, No 86-2013, 1988 WL 9582, at *10 (D.D.C. Jan. 29, 1988) ("[T]he employer of an independent contractor may be held liable for a trespass or a nuisance created by its independent contractor if the employer contracted for or directed the act constituting the trespass or nuisance."); Restatement (Third) of Agency § 7.04 (2006) ("A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and (1) the agent's conduct is tortious, or (2) the agent's conduct, if that of the principal, would subject the principal to tort liability.").

Based on Azzam's factual allegations, Safeguard could be held liable for the destruction of Azzam's house under one of the theories of liability discussed above, depending on the facts revealed in discovery.

To survive a motion to dismiss, the plaintiff must only allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. In light of the facts alleged and the principles of agency and tort law discussed above, Azzam has stated a claim for relief against Safeguard that is "plausible on its face" and "allows the court to draw the reasonable inference" that Safeguard would be liable for the misconduct alleged, assuming that Azzam has adequately alleged facts supporting

the elements of his underlying tort claims. *Twombly*, 550 U.S. at 5709; *Iqbal*, 129 S.Ct. at 1949.

Accordingly, the Court now turns to an assessment of Azzam's substantive claims.

### 2. Substantive Tort Claims

#### a. Trespass

Trespass consists of "an unauthorized entry onto property that results in interference with the property owner's possessory interest therein." *Dixon v. Midland Mortg. Co.*, 719 F. Supp. 2d 53, 56 (D.D.C. 2010). The Amended Complaint pleads sufficient facts to survive a motion to dismiss on this claim.

The Amended Complaint alleges that the House was razed to the ground without notice to or permission from Azzam. Am. Compl. ¶ 22. This allegation alone necessarily entails "an unauthorized entry onto property that result[ed] in interference with the property owner's possessory interest." *Dixon*, 719 F. Supp. 2d at 56. The Amended Complaint also states sufficient facts linking the defendants here to the trespass. A sign attached to a fence on Azzam's property after the demolition of the House had "Rightway Development" printed on it. *Id.* ¶ 23. When Azzam contacted Rightway, the person he spoke with told him that "the bank" had instructed Rightway to raze the House. *Id.* ¶ 26. Azzam has reasonably interpreted this statement to refer to CitiMortgage, the bank from which Azzam had purchased the House, or its agent Safeguard, which is alleged to have provided provide property management services for CitiMortgage in the District of Columbia. *See Id.* ¶¶ 3-5.

Thus, Azzam has stated a claim for trespass that could plausibly extend liability to Safeguard pursuant to the theories of liability discussed above in Section II.B.1. *See also Neumann Properties, Inc.*, 1988 WL 9582, at *10 ("[T]he employer of an independent contractor

may be held liable for a trespass . . . created by its independent contractor if the employer contracted for or directed the act constituting the trespass . . . .").

     **b.**    **Conversion**

Conversion entails "an unlawful exercise of ownership, dominion and control over the personalty of another in denial or repudiation of his right to such property." *Dennis v. Edwards*, 831 A.2d 1006, 1013 (D.C. 2003) (quoting *Blanken v. Harris, Upham & Co., Inc.*, 359 A.2d 281, 283 (D.C. 1976)).  Azzam alleges sufficient facts to survive a motion to dismiss on this claim as well.

In addition to the allegations discussed above, Azzam claims that "[a]fter purchasing the Property, [he] moved personal property items . . . into his House, including but not limited to, items and materials he intended to use to renovate and repair his House."  Am. Compl. ¶ 20.  Then, on October 21, 2010, "Mr. Azzam went to check on his Property and was shocked and distressed to find that his House had been razed to the ground and that *all of his [p]ersonal [p]roperty from the House was gone.*"  *Id.* ¶ 22 (emphasis added).

If proven, these allegations, combined with the allegations discussed above, would constitute an unlawful exercise of dominion and control over Azzam's personal property that completely deprived Azzam of his right to the personal property, satisfying the necessary elements of conversion.  Thus, Azzam has stated a claim for conversion that could plausibly extend liability to Safeguard under the theories of liability discussed above.

     **c.**    **Negligence**

Negligence requires "[a] duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach."  *District of Columbia v. Harris*, 770 A.2d 82, 87 (D.C. 2001) (citations omitted).

Safeguard correctly states that "[t]o allege negligence, a complaint cannot merely make conclusory assertions but must specify a negligent act and 'characterize the duty whose breach might have resulted in negligence liability.'" Mot. at 7. (quoting *District of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982)). The facts alleged in Azzam's Amended Complaint meet these requirements.

First, Azzam specifies the duty that was breached: "Safeguard had a duty to exercise due care to ensure that Safeguard [...] and entities acting under the direction or control of Safeguard did not interfere with Mr. Azzam's property interest in his Property, including his House, and his Personal Property." Am. Compl. ¶ 44. "Ordinarily, an actor whose conduct creates risks of physical harm to others has a duty to exercise reasonable care." Restatement (Third) of Torts, § 6 (2005). Safeguard has not pointed to any authority that would suggest that it did not have an ordinary duty to exercise reasonable care in allegedly directing the demolition of Azzam's house.

Next, Azzam specifies the alleged breach of duty: directing the razing of the House when Safeguard knew or should have known it belonged to Azzam. As discussed above, Azzam has presented sufficient facts to withstand a motion to dismiss on the issue of whether Safeguard was involved in or directed the demolition of Azzam's house. According to Azzam, Safeguard "knew or reasonably should have known" that Azzam owned the House. Am. Compl. ¶ 46. Azzam supports the allegation that Safeguard "knew or reasonably should have known" that Azzam owned the House with further facts, alleging that the House had been under Azzam's ownership for over five months prior to the razing, and that his deed had been recorded in the public record for over a month prior to the House's destruction. *See* Am. Compl. ¶ 17-9. The Amended Complaint also alleges facts to show that Azzam suffered damages proximately caused by the loss of his house. *See* Am. Compl. ¶¶ 49-50.

Azzam has therefore adequately alleged a negligence claim against Safeguard.[5]

**d.       Intentional Infliction of Emotional Distress**

A claim for Intentional Infliction of Emotional Distress ("IIED") in the District of Columbia requires, "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Purcell v. Thomas*, 928 A.2d 699, 711 (D.C. 2007).  "Intent or recklessness can be inferred from the outrageousness of the acts." *Id.* (citation omitted).  "The conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quotation omitted).  As the D.C. Court of Appeals has put it, "[t]he ultimate question is whether the recitation of the facts to an average member of the community would arouse his [or her] resentment against the actor, and lead him [or her] to exclaim 'Outrageous!'" *Id.* (alteration in original) (quotation omitted).

As discussed above, Azzam alleges that Safeguard intentionally directed the destruction of Azzam's House when Safeguard knew or should have known that Azzam was its sole owner. Such an action can plausibly be seen as outrageous enough to sustain a claim for IIED, thus satisfying the first element of the tort.  The unlawful destruction of a house and all of its contents – without notice, warning, or justification – is certainly conduct that would shock an average member of the community.

The second element of IIED, requiring the outrageous act to be intentional or reckless, is also satisfied here because "[i]ntent or recklessness can be inferred from the outrageousness of the act[]," *id.*, especially at this early stage in the litigation when any direct evidence of intent or recklessness likely remains exclusively in the hands of the defendants.  *See Ross v. DynCorp*,

---

[5] The facts alleged in the Amended Complaint or revealed in discovery might establish other bases for a negligence claim, and the Court's ruling here does not foreclose that possibility.

362 F. Supp. 2d 344, 360 (D.D.C. 2005) ("[T]he second essential element of the tort—the intent or recklessness of the defendant—is normally a factual question for the jury. . . Where direct evidence is for some reason lacking, intent or recklessness may be inferred from the very outrageousness of a defendant's conduct.") (internal quotations, alterations, and citations omitted).

Regarding the third element of IIED, emotional distress, Azzam alleges numerous symptoms of emotional injury, such as "severe major depression, difficulty sleeping, poor appetite, loss of capacity of enjoyment of life, and a difficulty remaining focused on tasks." Am. Compl. ¶ 29. Azzam further alleges that these harms have required medical care and medication. *Id.* These alleged facts, if proven at trial, would be sufficient to sustain the third prong of the IIED claim.

Accordingly, Azzam's IIED claim will not be dismissed at this stage in the litigation. *See Qutb v. Ramsey*, 285 F. Supp. 2d 33, 51-2 (D.D.C. 2003) (denying summary judgment on intentional inflection of emotional distress claim because reasonable minds could differ over the severity of defendant's conduct).

### e. Punitive Damages

Punitive damages are appropriate when "the defendant commits a tortious act 'accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury.'" *Jemison v. Nat'l Baptist Convention, USA, Inc.*, 720 A.2d 275, 285 n.10 (D.C. 1998) (quoting *Washington Med. Ctr. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990)). Since, as addressed above, the plaintiff has alleged facts allowing a plausible inference of recklessness from the nature of the defendants' alleged actions, it would be inappropriate to dismiss the claim for punitive damages at this stage.

*See Parker v. Stein*, 557 A.2d 1319, 1322 (D.C. 1989) ("Proof of [the elements establishing a right to punitive damages] may be inferred from the acts of the defendant and from circumstantial evidence. The issue is ordinarily one for the trier of fact.") (internal citations omitted); *see also id.* (holding that a conversion resembling a wrongful eviction could establish a sufficient basis for punitive damages); *Jemison*, 720 A.2d at 285-86 ("[T]he finder of fact can infer the requisite state of mind [for awarding punitive damages] from the surrounding circumstances; indeed, it is usually impossible to do otherwise, for direct evidence of that state of mind is rare."). Azzam has alleged facts that could plausibly show that Safeguard recklessly committed a tortious act. Therefore, the claim for punitive damages survives the motion to dismiss.

### f. Attorneys' Fees

Safeguard argues that the plaintiff's claim for attorneys' fees should be dismissed, but the Court will not preclude recovery of attorneys' fees at this time. Safeguard is correct that the District of Columbia follows "the American Rule under which . . . every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions. . . ." *Coulter v. Gerald Family Care, P.C.*, 964 A.2d 170, 204 (D.C. 2009) (quoting *Psaromatis v. English Holdings I, L.L.C.*, 944 A.2d 472, 490 (D.C. 2008)). One such exception to the American Rule permits recovery of attorneys' fees by a party in litigation "when the other party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Launay v. Launay, Inc.*, 497 A.2d 443, 450 (D.C. 1985) (citation omitted). While the Court, of course, has no reason to expect that such a remedy will be necessary in this case, it is premature to preclude the availability of attorneys' fees at this stage in the litigation.

Additionally, the District of Columbia "allow[s] attorneys' fees to be considered as an element of punitive damages." *Town Center Mgmt. Corp. v. Chavez*, 373 A.2d 238, 247 (D.C. 1977); s*ee also Robinson v. Sarisky*, 535 A.2d 901, 907 (D.C. 1988); Standardized Civil Jury Instructions for D.C. § 16.03 (2011) (explaining that attorneys' fees may be considered in assessing the amount of punitive damages). Therefore, the Court also does not foreclose the relevance of attorneys' fees to any available punitive damages award.

## III. CONCLUSION

For the reasons explained above, Safeguard's motion to dismiss the Amended Complaint is denied.

DATED: June 10, 2011                    /s/ *Beryl A. Howell*
                                        BERYL A. HOWELL
                                        United States District Judge